

James T. Wallner
Assistant United States Attorney
James.wallner@usdoj.gov

U.S. Department of Justice
United States Attorney
District of Maryland

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4971
MAIN: 410-209-4800
FAX: 410-962-3124

October 26, 2018

Gary Proctor, Esq.
8 Mulberry Street
Baltimore, Maryland 21201

Re:   United States v. Ricky Evans, a/k/a "Dorsey,"
Criminal No. JKB-17-0163(D. Md.)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Ricky Evans (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 1, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges the Defendant with conspiracy to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d). The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

### Elements of the Offense(s)

2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Superseding Indictment, in the District of Maryland,

    a.    the criminal enterprise, the Black Guerrilla Family, identified in the Superseding Indictment existed;

    b.    that the enterprise affected interstate or foreign commerce;

    c.    that the Defendant was associated with or employed by the enterprise;

    d.    that the enterprise engaged in a pattern of racketeering activity; and

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 NOV -5 PM 1:03
CLERK'S OFFICE
AT BALTIMORE
BY ____ DEPUTY

    e.    that the Defendant unlawfully, willfully and knowingly conspired with two or more persons to conduct and participate in the affairs of that enterprise through that pattern of racketeering activity.

Penalties

3.    The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1962(d) | N/A | Life | 5 years | $250,000 | $100 |

    a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

    c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant

agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.   a.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that, pursuant to United States Sentencing Guideline (U.S.S.G.) § 2E1.1(a), the applicable base offense level for a violation of 18 U.S.C. § 1962(d) is the greater of offense level 19 or the offense level applicable to the underlying racketeering activity. The parties further stipulate and agree that pursuant to U.S.S.G. § 1B1.3 the underlying racketeering activities in this case involve acts, committed, aided, abetted counseled, commanded induced or willfully caused by the Defendant, as well as all those acts reasonably foreseeable to him in furtherance of the jointly undertaken criminal enterprise, and include, among others:

i.      murder in the first degree, and conspiracy to commit murder in the first degree in violation of Md. Code Ann., Crim Law §§ 1-201, 2-201, and the Common Law of Maryland, with a base offense level of 43[1], pursuant to U.S.S.G. § 2A1.1; and

---

[1] The guideline range for racketeering activity that violates state law is determined by the most analogous federal offense. U.S.S.G. § 2E1.1 n. 2.

4

ii.     conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846, with a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(c)(5).

The parties further stipulate and agree that the Defendant was an organizer, or leader of the racketeering enterprise that involved more than five participants. As a result the base offense level is increased by 4 levels.

Pursuant to U.S.S.G. § 2E1.1 n.1, each underlying racketeering offense is treated as a separate count of conviction; however, because the racketeering activity involving the conspiracy to distribute controlled substances is more than nine levels less serious than racketeering activity involving murder, the drug trafficking conspiracy is disregarded in calculating the advisory guideline range, pursuant to U.S.S.G. § 3D1.4(c).

b.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office

5

deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii. This Office reserves the right to appeal any sentence below a statutory minimum; and

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

One .233 caliber Bushmaster model XM15-E2SM4, bearing serial number BF1687818.

    c.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

    d.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    e.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

12.    a.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

    b.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the

7

Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

13. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
James T. Wallner
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-29-18
Date

Ricky Evans

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10-29-18
Date

Gary Proctor, Esq.

9



## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

### The Racketeering Enterprise

1. The Black Guerilla Family ("BGF"), also known as the "Black Family" or "Jamaa," the Swahili word for family, "J" for short, is a nationwide gang operating in prisons and on the streets of various cities throughout the United States. Founded in California in the 1960s, BGF appeared in the Maryland correctional system in the 1990s. Although still a prison gang, BGF is involved in criminal activity, including murder, robbery, extortion, narcotics trafficking, obstruction of justice, and witness intimidation throughout communities in Baltimore City, the State of Maryland, and elsewhere.

2. BGF organizes its members into "regimes" or "bubbles" corresponding to particular regions or neighborhoods in Baltimore City and other Maryland communities. These "regimes" or "bubbles" were organized and controlled by a hierarchy, called "the bubble," which consists of a "Commander;" "Lieutenant Commander;" various subordinate "Ministers," including Ministers of Justice, Defense, Education, and Finance; as well as other ranks including Sergeant-at-Arms and Field Marshall. Each subordinate had specialized responsibilities including the collection of dues and the defense of the regime against rival gangs or drug traffickers. The remaining members of the regime are said to be in the "field" and are responsible for following the directives of the bubble.

3. Each bubble then generally reports to a bush member of bushman, who controls larger swaths of territory on behalf of BGF. Bush members are elder statesman of BGF and maintain inter-bubble discipline and settle disputes among the various bubbles operating in the territory the bush member controls. The bush member than reports to the City-Wide commander or Hodari, of BGF.

4. BGF members were required to follow a code of conduct, sometimes called the "22's" and "33's" or collectively the "55's." BGF members who violate this code or who disobey an order from a superior are subjected to disciplinary measures called "sanctions," which include fines, physical beatings, stabbings, and murders administered by other BGF members.

5. BGF members engaged in various criminal activities on the streets of Baltimore City, including, but not limited to, drug-trafficking, extortion, robbery, bribery and money laundering, retaliation against witnesses and obstruction of justice.

6. BGF members use the funds procured through the various criminal activities to

1

enrich themselves and to further the activities of the organization.

7. BGF members are required to pay dues derived from the proceeds of their criminal activities, including drug trafficking. The dues are paid "up the chain" and are collected by the bush member responsible for the particular bubble. The funds are then supposed to be used to pay for bail and/or lawyers of incarcerated members; to assist incarcerated members; pay for contraband for incarcerated members; or assist incarcerated member's family members in the community.

8. BGF, including its leadership, members and associates, constituted an "enterprise" as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

9. The purposes of the enterprise included the following:

    a. Enriching the leaders, members, and associates of the enterprise through the distribution of controlled substances, use of threats, intimidation, and violence, including, but not limited to, acts of murder, and retaliation against witnesses;

    b. Promoting and enhancing the enterprise and its members' and associates' activities;

    c. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the distribution of controlled substances, use of threats, intimidation, and violence, including acts of murder, witness retaliation, assaults, and other acts of violence;

    d. Preserving and protecting the enterprise and its leaders by keeping its members and associates from cooperating with law enforcement through intimidation, violence, and threats of violence;

    e. Providing financial support and information to members, including those who were incarcerated for committing acts of violence or other offenses;

    f. Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct, and prevent law enforcement officers from identifying, apprehending, and punishing the offender; and

    g. Keeping victims and witnesses in fear of the enterprise and in fear of its leaders, members, and associates through acts and threats of violence.

## The Racketeering Conspiracy

10. Beginning on a date unknown to the Grand Jury, but at least prior to 2010, and continuing until on or about February 22, 2018 and thereafter, in the District of Maryland, and elsewhere, the Defendant, **RICKY EVANS, a/k/a, "Dorsey,"** being a person employed by and associated with BGF, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, together with persons known and unknown, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which pattern of racketeering activity consisted of multiple acts involving: murder, chargeable under Md. Code Ann., Crim Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland punishable pursuant to Md. Code Ann., Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206 (Maryland Murder); Kidnapping chargeable under Md. Code Ann., Crim Law § 3-502 (Maryland Kidnapping); Extortion, chargeable under Md. Code Ann., Crim Law § 3-701 (Maryland Extortion); and § 3-705 (Maryland Extortion by verbal threat) and the Common Law of Maryland; Robbery, chargeable under Md. Code Ann., Crim Law § 3-402 (Maryland Robbery); and § 3-403 (Maryland Robbery with a Deadly Weapon) and the Common Law of Maryland; 21 U.S.C. § 846 (conspiracy to distribute a controlled substance); and 21 U.S.C. § 841 (distribution and possession with intent to distribute a controlled substance); and multiple acts indictable under: 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant); 18 U.S.C. § 1513 (retaliating against witnesses, victims and informants); and 18 U.S.C. § 1951 (relating to the interference of commerce through robbery and extortion).

11. The Defendant committed, or agreed that a conspirator would commit, at least two acts of racketeering activity in the conduct of the affairs of the enterprise, including, murder and drug trafficking.

12. Based on the facts readily provable by the Government, it was foreseeable to the Defendant, and in furtherance of the conspiracy that members of the conspiracy possessed with the intent to distribute more than one kilogram of heroin; more than 280 grams of cocaine base, and more than five kilograms of cocaine.

## Acts in Furtherance of the Enterprise

13. During the period of the conspiracy, **RICKY EVANS, a/k/a, "Dorsey,"** ("**EVANS**"), was a high-ranking member of BGF (a Bushman) and controlled BGF regimes in East Baltimore, Maryland.

14. During the period of the conspiracy, **EVANS**, obtained quantities of controlled substances, including heroin, cocaine, and cocaine base ("crack") and distributed those controlled substances through various BGF-controlled open-air drug shops in East Baltimore and elsewhere.

15. During the period of the conspiracy, **EVANS**, operated a murder for hire scheme.

3

EVANS accepted payments from individuals seeking to have violence committed against individuals, and then tasked other BGF members to commit those acts.

16. In 2010, during the period of the conspiracy, **EVANS** authorized BGF members to kidnap, extort and/or rob Marcal Walton. During the kidnapping, BGF members shot and killed Walton as he tried to flee from his kidnappers.

17. In 2010, during the period of the conspiracy, **EVANS** authorize the murder of Darel Alston, a BGF member, for his alleged cooperation with law enforcement regarding the botched kidnapping of Marcal Walton.

18. During the period of the conspiracy, **EVANS**, an employee of *Safe Streets*, a Baltimore-based anti-violence initiated, used the office of *Safe Streets* to hold BGF meetings, to store and distribute drugs, and to store, and allow to be stored firearms used in other crimes.

19. During the period of the conspiracy, **EVANS** possessed firearms for his protection and the protection of the enterprise including on or about March 16, 2016 a stolen and loaded .223 caliber Bushmaster model XM15-E2SM4, bearing serial number BF1687818.

SO STIPULATED:

_____
James T. Wallner
Assistant United States Attorney

_____
Ricky Evans
Defendant

_____
Gary Proctor, Esq.
Counsel for Defendant

4